UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM MICHAEL STARKEY, CDCR #AP-1831,<br><br>        Plaintiff,<br><br>  vs.<br><br>EDWARD HERNANDEZ,<br><br>        Defendant. | Case No.: 3:17-CV-1158 JLS (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 38) |

Presently before the Court is Defendant Edward Hernandez's Motion for Summary Judgment ("MSJ," ECF No. 38). Also before the Court is Plaintiff Adam Michael Starkey's Opposition to the Motion ("Opp'n," ECF No. 41). Having considered the record evidence, the parties' arguments, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

## BACKGROUND

Plaintiff Adam Michael Starkey, a prisoner currently incarcerated at Centinela State Prison ("CEN") located in Imperial, California, is proceeding pro se and *in forma pauperis* ("IFP") in this civil action pursuant to 42 U.S.C. § 1983.

///

///

1

## I. Factual Background

### A. *Plaintiff's Claims*[1]

On June 2, 2016, Plaintiff filed an administrative grievance "against CC I Edward Hernandez." ECF No. 1 ("Compl.") at 2. Plaintiff alleged that Hernandez verbally had threatened him "with physical assault several times previously." *Id.* On May 17, 2016, Plaintiff "voiced [his] concern" for his safety to the Chairperson of the Classification Committee. *Id.* at 3. At this classification hearing, Plaintiff was "told to file an inmate appeal," which Plaintiff did on June 2, 2016, as an "attempt to resolve [his] safety concerns via the Classification Committee's instructions." *Id.*

On June 14, 2016, twelve days after Plaintiff filed his administrative grievance, Defendant ordered Plaintiff out of his cell and brought to Defendant's office. *Id.* Defendant informed Plaintiff that he was "going to interview" Plaintiff regarding the concerns he had raised in his administrative grievance. *Id.* Plaintiff alleges Defendant said, referring to Plaintiff's grievance, "what the [expletive] is this?" *Id.* Plaintiff claims that Defendant threatened him to "drop the complaint." *Id.* Plaintiff refused and told Defendant that he was "not going to speak to him any longer" and that Defendant should give Plaintiff's grievance to his "superior officer as is proper procedure." *Id.*

Plaintiff alleges Defendant "raised his voice and threatened" him again, stating that Plaintiff "was going to sign-off and drop the complaint 'or else.'" *Id.* Plaintiff again refused and "attempted to walk out of the office." *Id.* at 4. Plaintiff claims Defendant then "leaped on [Plaintiff's] backside[,] placing [him] in a choke hold from behind." *Id.* Plaintiff further alleges Defendant used "his body weight to tackle [Plaintiff], twisting and damaging [his] medial collateral ligament (M.C.L.) in [his] right knee." *Id.*

---

[1] Plaintiff's Complaint contains factual allegations within Plaintiff's personal knowledge that are verified under penalty of perjury. *See* ECF No. 1 at 7; *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under Federal Rule of Civil Procedure 56.); *accord Norwood v. Woodford*, 661 F. Supp. 2d 1148, 1151 (S.D. Cal. 2009).

Plaintiff was "placed in handcuffs when other officers responded and taken to a small holding cage." *Id.* Plaintiff informed "medical staff that [Defendant] had attacked" him and his "right knee was in severe pain." *Id.* Plaintiff was then "re-housed in a different prison facility unit without seeing a doctor." *Id.*

### B. *Defendant's Claims*

Defendant is a Correctional Counselor I and was working at CEN on June 14, 2016. *See* Declaration of Defendant E. Hernandez ("Hernandez Decl.") ¶ 2, ECF No. 38-5. On that day, Defendant was "asked by the prison's appeals coordinator's office to conduct a First Level interview" with Plaintiff "regarding an inmate appeal [Plaintiff] had filed." *Id.* This interview took place in the Correctional Counselor's office. *Id.* ¶ 3. Plaintiff was "brought into the office and sat in a chair directly in front of [Defendant], on the other side of the desk." *Id.*

Defendant claims that Plaintiff "became angry, abruptly stood up, and walked over to the side of [Defendant's] desk and began raising his voice." *Id.* Plaintiff was "only a couple feet away" from Defendant. *Id.* Defendant contends Plaintiff was "blocking [his] only avenue of exiting the office, and the desk was no longer separating" Defendant and Plaintiff. *Id.*

Defendant claims that he became concerned for his personal safety because of Plaintiff's "aggressive, hostile, and escalating behavior" within the "close confines of the office." *Id.* ¶ 4. Defendant contends that he was "concerned for his safety because of the substantial difference in our physical make up." *Id.* Defendant "repeatedly ordered [Plaintiff] to sit back in the chair or leave the office." *Id.* Defendant alleges that Plaintiff ignored his orders and "continued with his aggressive behavior." *Id.* Defendant "stood up and ordered [Plaintiff] to leave the office immediately." *Id.* Defendant claims Plaintiff ignored his orders again and took another step toward him. *Id.*

Defendant alleges that his concern for his personal safety increased as Plaintiff was "continuing to act hostile," would not obey his orders, and "advanced closer" to him. *Id.* ¶ 5. Defendant "immediately ordered [Plaintiff] in a commanding voice to 'Get down! Get

3

down!'" *Id.* Plaintiff ignored Defendant's orders. *Id.* As a result, Defendant "made the split-second decision to use both [his] hands to push [Plaintiff] in his upper torso area to try and move him out of the office, through the doorway, to create some distance between" him and Plaintiff. *Id.* Defendant claims he was "able to get [Plaintiff] just out of the office doorway" but Plaintiff was "still blocking [his] ability to get out of the office." *Id.*

Defendant once again ordered Plaintiff to "Get down! Get down!" *Id.* ¶ 6. Plaintiff, however, continue to ignore Defendant's orders. *Id.* Defendant alleges he "believed that additional force was necessary to gain [Plaintiff's] compliance" with his orders and to "prevent the situation escalating any further." *Id.* Defendant "wrapped both of [his] arms around [Plaintiff's] upper torso and turned [his] body away from the office, in an attempt [to] redirect the incident away from the close confines of the office, and to get [Plaintiff] off balance and onto the ground." *Id.* Defendant claims Plaintiff "resisted [his] effort to take him to the ground by using his body weight to try and pull away from [him]." *Id.* Defendant "transitioned [his] upper body to over the top of [Plaintiff's] upper torso and back and utilized [his] body weight to force him the rest of the way to the ground." *Id.* Plaintiff "landed on his stomach" with Defendant "on the top of his upper back and right shoulder." *Id.* Defendant's "left arm was under [Plaintiff's] right arm, [Defendant's] right arm was over [Plaintiff's] left shoulder, and [Plaintiff's] hands were interlocked underneath him around his chest." *Id.* Correctional Officers Macias and Espinoza arrived and "placed [Plaintiff] in handcuffs." *Id.* Defendant claims "it was only then that [Plaintiff] stopped resisting" him. *Id.*

Plaintiff "was then escorted to a holding cell in the Facility C Program Office" where he was "assessed by Nurse J. Coronado." *Id.* ¶ 8. Nurse Coronado prepared a "Medical Report of Injury or Unusual Occurrence" that, according to Defendant, indicates that the "described use of force shows only minor injuries that are consistent with the force [Defendant] used on [Plaintiff]." *Id.* ¶ 8, Ex. B.

Correctional Sergeant Gomez then informed Plaintiff "that he would be transferred to Facility B, and that he would receive a 115 Rules Violation Report." *Id.* ¶ 9. Defendant

4

"filed a 115 Serious Rules Violation Report (RVR)" against Plaintiff for "engaging in behavior [that] could lead to violence." *Id.* ¶ 10; *see also id.*, Ex. C.

A hearing on Plaintiff's RVR was "held on August 3, 2016." *Id.* ¶ 11. Plaintiff was "found guilty of the charged" offense and assessed a loss of thirty days of good-time credits, ten days confinement to quarters, and sixty days loss of yard recreation privileges. *Id.* "Upon review, this 115 RVR was re-heard by Senior Hearing Officer (SHO) Lieutenant J. Coronado on February 28, 2017." *Id.* ¶ 13. This rehearing was due to the previous hearing officer failing to "document the reason he denied [Plaintiff's] request to submit a written statement." *Id.*; *see also id.*, Ex. D. Following the rehearing, Plaintiff was "again found guilty of behavior [that] could lead to violence and assessed the thirty-day loss of good-time credit." *Id.*

## II. Procedural History

Plaintiff filed his Complaint on June 8, 2017. *See generally* Compl. On August 1, 2017, the Court granted Plaintiff leave to proceed *in forma pauperis* and screened Plaintiff's Complaint before service. ECF No. 9. The Court *sua sponte* dismissed without prejudice Defendants California Department of Corrections and Rehabilitation ("CDCR"), and CEN, *see* ECF No. 4 at 6–7, but found Plaintiff's excessive force and retaliation allegations against Defendant Hernandez sufficient to state plausible claims. *Id.* at 5–6.

Defendant filed the instant Motion for Summary Judgment on November 9, 2018. ECF No. 84. Plaintiff filed his Opposition to Defendant's Motion, ECF No. 41, and, after Defendant did not file a reply, the Court took the matter under submission without oral argument. ECF No. 44.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect

the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a party seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

Courts liberally construe filings and motions of pro se inmates and avoid applying summary judgment rules strictly to pro se inmates. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citing *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). Further, courts will consider both verified pleadings and verified motions, "where such contentions

are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the inmate] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–400 (9th Cir. 1998).

**ANALYSIS**

Defendant Hernandez seeks summary judgment on the grounds that: (1) he did not violate Plaintiff's Eighth Amendment right to be free from excessive force; (2) he did not retaliate against Plaintiff in violation of his First Amendment rights; (3) Plaintiff cannot bring both an Eighth and Fourteenth Amendment claim based on the same set of facts; (4) Plaintiff's Eighth Amendment claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (5) Hernandez is entitled to qualified immunity. *See* MSJ at 6.

**I.    Eighth Amendment Excessive Force Claims**

The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment violation occurs only when an inmate is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Jeffers v. Gomez*, 267 F.3d 895, 900 (9th Cir. 2001). "Force does not amount to a constitutional violation . . . if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley*, 475 U.S. at 320-21); *see also Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (extending the *Whitley* Eighth Amendment analysis from prison riots to "whenever guards use force to keep order"). "When prison officials maliciously and sadistically use force to cause harm," *Hudson*, 503 U.S. at 9, the Supreme Court has recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

///

7

Under *Whitley* and *Hudson*, the "core judicial inquiry" requires consideration of several relevant factors: (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) the "threat 'reasonably perceived by the responsible officials,'" (4) "'any efforts made to temper the severity of a forceful response,'" and (5) the extent of the injury suffered. *Id.* at 7 (quoting *Whitley*, 476 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

"[T]he absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." *Jordan v. Gardner*, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993) (en banc). The Supreme Court has made clear that the Eighth Amendment may be violated by the use of excessive force against a prison inmate "'[even] when the inmate does not suffer serious injury.'" *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson*, 503 U.S. at 4). While the extent of an inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38.

"[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9). Indeed,

> "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." . . . An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Id.* at 37–38.

Here, no party disputes that there was a physical altercation between Plaintiff and Defendant on June 14, 2016. *See* Compl. at 4; Opp'n at 3; Hernandez Decl. ¶¶ 5–6. There is a genuine dispute, however, surrounding the circumstances under which Defendant

admits he used physical force on Plaintiff. Defendant admits he "push[ed] [Plaintiff] in his upper torso area." *See* Hernandez Decl. ¶ 5. He further admits that he "wrapped both of his arms around Plaintiff" and "transitioned [his] upper body over the top of [Plaintiff's] upper torso and back and utilized [his] own body weight to force him the rest of the way to the ground." *Id.* ¶ 6. Defendant claims this force was necessary because Plaintiff "was engaging in behavior that could lead to violence." *Id.* ¶ 15. For his part, Plaintiff asserts that he was "walk[ing] out of the office when [Defendant] leaped on [his] backside placing [him] in a chokehold from behind using his body weight to tackle [Plaintiff]," causing Plaintiff to suffer a knee injury. *See* Compl. at 4. Plaintiff also states in his Opposition that he was "assaulted from behind" by Defendant when he "attempted to walk away." Opp'n at 3.

Based on this evidence, a rational trier of fact could find that Defendant's use of force against Plaintiff was unprovoked, unnecessary, and carried out while Plaintiff was walking away from Defendant. *See Martinez v. Bryant*, No. CV 06-5344-GW (AGR), 2009 WL 1456399, at *2 (C.D. Cal. May 19, 2009) (finding evidence that attack was unprovoked created a genuine issue as to whether force was applied maliciously or sadistically for the very purpose of causing harm) (citing *Hudson*, 503 U.S. at 4); *see also Felix v. McCarthy*, 939 F.2d 699, 701–02 (9th Cir. 1991) (affirming denial of summary judgment where evidence showed guards' use of force was unprovoked). A rational trier of fact could credit Defendant's account and find his use of force justified because Plaintiff was recalcitrant, had refused several direct orders to get down, and approached Defendant in order to threaten or cause physical injury to Defendant. *See Furnace*, 705 F.3d at 1029 n.4 (noting the "spontaneous use of force can be necessary . . . in response to a [reasonably] perceived danger or threat."). These two possible outcomes indicate that there is a dispute of material fact that must be decided by the fact finder.

While Defendant focuses on Plaintiff's "very minor injuries" to show that the use of force was "*de minimus*" and therefore not excessive, MSJ at 16 (citing *Hudson*, 503 U.S. at 9–10), the severity of Plaintiff's injury—although relevant—does not by itself show that

Defendant's actions were reasonable as a matter of law. *See Wilkins*, 559 U.S. at 37–38. For example, in *Wilkins*, the plaintiff suffered only a bruised heel and back pain. *Id.* The Supreme Court expressly rejected the notion that a significant injury is a required to show excessive force under the Eighth Amendment. *Id.* at 38–39 & 39 n.2 (rejecting view that "to support an Eighth Amendment excessive force claim a prisoner must have suffered . . . more than *de minimus* physical injury"). Thus, while a reasonable factfinder could conclude that the minimal nature of Plaintiff's injury supports Defendant's claim that the amount of force he used was appropriately tempered and was only the amount of force necessary under the circumstances for him to maintain or restore discipline, *see Hudson*, 503 U.S. at 7, a reasonable factfinder could also reasonably find, based on Plaintiff's allegations in his verified Complaint regarding the incident, that Defendant acted "maliciously and sadistically for the very purpose of causing harm." Compl. at 6.

Based on the evidence in the record before it, and in light of the relevant law governing Plaintiff's Eighth Amendment claim, the Court finds that Defendant has not established the absence of a genuine dispute as to the material facts of Defendant's use of force. The Court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury."); *see also Smith v. City of Hemet*, 396 F.3d 689, 701 (9th Cir. 2005) ("Because [the excessive force inquiry] nearly always requires a jury to sift through factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.") (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, the Court **DENIES** Defendant's Motion for Summary Judgment as to the Eighth Amendment excessive force claims.

///

///

///

## II. First Amendment Retaliation Claims

Defendant seeks summary judgment as to Plaintiff's retaliation claim on the ground that Defendant "did not take any adverse action against Plaintiff because Plaintiff previously filed an inmate appeal against Defendant." MSJ at 18.

It is well established that "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). The Ninth Circuit has set forth five basic elements of a "viable claim of First Amendment retaliation" in the prison context:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005).

Defendant claims that his "use of force was justified and reasonable given the legitimate penological interest of safety and security issues raised by Plaintiff's failure to comply with orders." *See* MSJ at 18. Plaintiff bears the ultimate burden to demonstrate that legitimate correctional purposes, such as preserving institutional order and discipline, did not motivate Defendant's actions, *Pratt v. Rowland*, 65 F.3d 802, 806–808 (9th Cir. 1995), and that the use of force "did not reasonably advance a legitimate correctional goal," *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568). Nevertheless, Ninth Circuit authority holds that, "when there is a genuine issue of material fact as to whether the action was taken in retaliation," "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Here, the reasonableness of the use of force is a disputed issue of material fact. *See supra* Analysis Section I. When taken as a whole and viewed in the light most favorable Plaintiff, the Court finds that the record before it puts Defendant's motives genuinely at issue. *See Bruce*, 351 F.3d at 1289. A reasonable factfinder could conclude that Defendant called Plaintiff into his office and used force against him in retaliation for filing an appeal

against him. Therefore, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claims.

### III. Fourteenth Amendment Claims

Defendant also seeks summary judgment of Plaintiff's Fourteenth Amendment due process claim because "Plaintiff bases his due process claim on the same set of facts supporting his Eighth Amendment excessive force claim." MSJ at 19. "Where an amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that Amendment that 'must be the guide for analyzing the complaint.'" *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).

A review of the Complaint indicates that Plaintiff uses the same set of facts to support both his Eighth and Fourteenth Amendment claims and Plaintiff does not offer any argument in his Opposition, apart from the arguments supporting his Eight Amendment claims, to support a Fourteenth Amendment claim. Therefore, the Court finds that Plaintiff's excessive force claims are more properly analyzed under the Eighth Amendment and **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment claims.

### IV. Excessive Force and Retaliation Claims under *Heck v. Humphrey*

Defendant argues that both Plaintiff's excessive force claims and his retaliation claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendant has attached a copy of Plaintiff's RVR in which he was charged with "behavior which could lead to violence." *See* Hernandez Decl., Ex. C. Following the issuance of the RVR, Plaintiff was the subject of a disciplinary hearing that was later reheard. *Id.* On February 28, 2017, the second disciplinary hearing was held. Hernandez Decl., Ex. D. Plaintiff was found guilty of the charged offense and assessed 30 days of credit loss and 30 days of yard recreation privileges. *Id.*

///

///

In *Heck,* the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-87.

"Suits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.'" *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489-99 (1973)) (holding that a writ of habeas corpus is "explicitly and historically designed" to provide a state prisoner with the "exclusive" means to "attack the validity of his confinement" in federal court).

Defendant argues that if the Court were to find in favor of Plaintiff on either the excessive force claim or the retaliation claim, it would "be at odds" with the finding that the use of force by Defendant was "an attempt to control Plaintiff's aggressive and hostile behavior and to gain Plaintiff's compliance with lawful orders" and that Plaintiff's action "necessitated the use of force." *See* MSJ at 21.

In support of his argument, Defendant points to *Cunnigham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), in which the Ninth Circuit found that *Heck* bars section 1983 actions involving claims of excessive force under the Fourth Amendment during an arrest. *Id.* at 21. Defendant does not cite to more recent authority, however, in which the Ninth Circuit held that a conviction of resisting arrest under the California Penal Code "does not bar a § 1983 case for excessive force under *Heck* when the conviction and the § 1983 claim are

based on different actions during 'one continuous transaction.'" *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (citations omitted). Here, Plaintiff was charged with "behavior which could lead to violence." Even if it is undisputed that Plaintiff exhibited such behavior, there is a disputed issue of fact as to whether Defendant's response to the behavior was excessive.

The Ninth Circuit has also held that "a § 1983 action is not barred under *Heck* unless it is clear from the record that its successful prosecution would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid." *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2006) (en banc) (emphasis in original). Here, if Plaintiff were to prevail in this action, it is not at all clear that it would invalidate his disciplinary conviction of behavior which could lead to violence. Moreover, even if Plaintiff did commit such behavior, that does not exclude the possibility that the force used in response to the alleged actions of Plaintiff was excessive in light of the circumstances. Defendant has supplied no legal authority to support his argument that *Heck* necessarily bars Plaintiff's retaliation claim, and Defendant does not give any reason why Plaintiff's disciplinary conviction would be invalidated if he were to prevail on his retaliation claims. The Court therefore finds that it is not "clear from the record that its successful prosecution would *necessarily*" imply the invalidity of Plaintiff's disciplinary conviction. *See Smith,* 394 F.3d at 699. Thus, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claims and Eighth Amendment excessive force claims under *Heck*.

## V. Qualified Immunity

Defendant argues he is entitled to qualified immunity "because he did not knowingly violate . . . Plaintiff's clearly established rights." *See* MSJ at 18–19. "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers*, 267 F.3d at 910 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the

14

court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has since held that "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As noted above, genuine disputes of material fact exist as to whether Defendant violated Plaintiff's Eighth Amendment rights. *See supra* Analysis Section I. This conclusion is based not only on Plaintiff's claims of improper motive, but also on specific, nonconclusory factual allegations as to the specifics of the altercation. This evidence could establish that Plaintiff was not resistant, facing away, and posing no discernible threat to Defendant at the time he was grabbed from behind and, therefore, Defendant's actions were "unnecessary" and "wanton." *See Jeffers*, 267 F.3d at 907 (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). Having found that the facts, taken in the light most favorable to Plaintiff, demonstrate a constitutional violation, "the next . . . step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 202. This does not mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Instead, "in the light of pre-existing law[,] the unlawfulness must be apparent." *Id*. The "salient question" is whether the state of the law at the time gives officials "fair warning" that their conduct is unconstitutional. *Id*. at 740. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 202. Indeed, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. To find that the law was clearly established, the court "need not find a prior case with identical, or even

'materially similar,' facts." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136–37 (9th Cir. 2003) (quoting *Hope*, 536 U.S. at 741).

Defendant argues that, "[b]ased on the circumstances in this case, it would not have been clear to a reasonable official that [Defendant]'s actions . . . [were] unlawful under the circumstances." MSJ at 23. The Court disagrees. The Ninth Circuit has specifically held that "a prison guard's use of excessive force was clearly established" since 1992 when the Supreme Court held that the "settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Martinez*, 323 F.3d at 1184 (quoting *Hudson*, 503 U.S. at 5). *Hudson* itself held unconstitutional the unjustified use of physical force upon a non-resistant prisoner. *See Hudson*, 503 U.S. at 7–10 (holding that guards violated *Hudson*'s Eighth Amendment rights when they gratuitously punched and hit him, causing only minor injuries, while escorting him between prison facilities); *see also Martinez*, 323 F.3d at 1184 (finding qualified immunity improperly granted to officers who allegedly beat an inmate during a cell extraction, despite his lack of resistance); *McRorie v. Shimoda*, 795 F.3d 780, 784 (9th Cir. 1986) (finding Eighth Amendment violation when prisoner was assaulted while not resisting). Defendant's claims that "reasonable prison officials could have believed that Plaintiff's continued aggression and refusal warranted the *de minimus* use of force that Defendant [] applied" is predicated solely on Defendant's version of the facts surrounding the altercation. *See* MSJ at 23–24. If Plaintiff proves that he was in fact leaving Defendant's office and, unprovoked, Defendant attacked him with his back turned, the unconstitutionality of that action was clearly established. Therefore, the Court **DENIES** Defendant's Motion for Summary Judgment based on qualified immunity.

## CONCLUSION

For the reasons explained, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (ECF No. 38). Specifically, the Court **GRANTS** Defendant's Motion as to Plaintiff's Fourteenth Amendment claims; Defendant's Motion is otherwise **DENIED**. The parties **SHALL CONFER** and **SHALL**

**FILE** a proposed schedule of pretrial dates and deadlines within fourteen (14) days of the electronic docketing of this Order.

**IT IS SO ORDERED**.

Dated: April 24, 2019

Hon. Janis L. Sammartino
United States District Judge